# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

FILED BY __MC__
May 4, 2015
STEVEN M. LARIMORE
CLERK U.S. DISTRICT CT.
S.D. OF FLA. MIAMI

John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

May 04, 2015

Steven M. Larimore
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number: 13-11017-DD
Case Style: USA v. Jessica Harris
District Court Docket No: 2:12-cr-14046-KMM-6

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DOUGLAS J.MINCHER, Clerk of Court

Reply to: Lois Tunstall
Phone #: (404) 335-6224

Enclosure(s)

MDT-1 Letter Issuing Mandate

UNITED STATES COURT OF APPEALS
For the Eleventh Circuit

_____

No. 13-11017
_____

District Court Docket No.
2:12-cr-14046-KMM-6

UNITED STATES OF AMERICA,

                                                               Plaintiff - Appellee,

versus

JESSICA HARRIS,

                                                               Defendant - Appellant.

_____

Appeal from the United States District Court for the
Southern District of Florida
_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: April 03, 2015
For the Court: Douglas J. Mincher, Clerk of Court
By: Jeff R. Patch

**ISSUED AS MANDATE 05/04/2015**

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-11017

_____

D.C. Docket No. 2:12-cr-14046-KMM-6

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JESSICA HARRIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 3, 2015)

Before TJOFLAT and JULIE CARNES, Circuit Judges, and DuBOSE, District Judge.[*]

PER CURIAM:

---

[*] Honorable Kristi K. DuBose, United States District Judge for the Southern District of Alabama, sitting by designation.

Defendant Jessica Harris appeals her 24-month sentence, imposed after pleading guilty to one count of conspiracy to commit mail fraud and two counts of mail fraud, in violation of 18 U.S.C. §§ 1349 and 1341, respectively. On appeal, Defendant argues that the district court erred by including the amount of fraudulent checks cashed by co-conspirator Venus Holloman in the loss amount attributed to Defendant. Second, Defendant argues that the district court erred by determining that two of her prior state convictions were unrelated for the purpose of calculating her criminal history category. We find no reversible error and affirm.

## I.     Background

According to the presentence investigation report ("PSR"), Defendant joined a scheme to cash fraudulent refund checks purportedly issued as part of a program to provide healthcare insurance for indigent children in Georgia. The leader of the scheme was Erica Gilmore-Grier, who was an employee at Policy Studies, Inc., a company that was responsible for administering Georgia PeachCare for Kids. The latter was a children's insurance program providing affordable healthcare for low-income children in Georgia. Using her position at Policy Studies, Gilmore-Grier authorized Policy Studies employees to issue refund checks, drawn either on Policy Studies' or Georgia PeachCare's bank account, to several individuals who were not enrolled in the designated program and who were therefore not authorized to receive benefits. A Secret Service investigation revealed that, all total, Gilmore-

Grier had caused the issuance of 77 fraudulent refund checks, totaling $219,172.56, to fifteen individuals who had subsequently cashed the majority of these checks.

Venus Holloman, Defendant's aunt, was also part of the scheme, and it was she who approached Defendant and encouraged her to likewise participate by cashing some of the fraudulently-issued checks for Gilmore-Grier. Defendant subsequently began cashing checks for Gilmore-Grier over a five-month period of time. Later on Defendant also recruited another aunt, Jamile Williams, to do the same.

In calculating loss under the United States Sentencing Guidelines, the PSR held Defendant responsible for the checks she personally cashed (totaling $12,900); the checks cashed by the aunt that Defendant recruited (Jamile Williams) (totaling $16,700); and the checks cashed by Holloman <u>after</u> Defendant began participating in the scheme (totaling $17,750). The PSR therefore attributed $47,350 in total loss to Defendant.

As to the final Guidelines' calculations reflected in the PSR, the latter calculated a base offense level of 7, pursuant to U.S.S.G. § 2B1.1(a)(1). Defendant received a six-level enhancement under § 2B1.1(b)(1)(D). The latter assesses a six-level enhancement when the loss amount is greater than $30,000, but less than $70,000, and Defendant's loss was calculated as being $47,350. After receiving a

two-level reduction under § 3E1.1(a) for acceptance of responsibility, Defendant's total offense level was 11.

Albeit Defendant was only twenty-three years old when sentenced for the present offense, she already had three prior convictions for fraud offenses. These prior convictions resulted in the assessment of seven criminal history points, which placed Defendant in criminal history category IV. Based on her criminal history category of IV and total offense level of 11, Defendant's resulting Guidelines' range was 18 to 24 months' imprisonment. The district court overruled Defendant's objections to the loss and criminal history calculation, and sentenced her to 24 months' imprisonment.

She now appeals that sentence.

## II.   Discussion

### A.   Loss Calculation

Defendant challenges the inclusion in her loss calculation of $17,750 attributable to co-defendant Holloman's activities that were made in furtherance of the scheme to cash fraudulent checks and that occurred after the latter had solicited Defendant to join the scheme. In a case involving jointly undertaken criminal activity, the defendant is responsible for all reasonably foreseeable acts of others in furtherance of this activity that occurred during the offense's commission, in preparation for the offense, or in the course of attempting to avoid detection.

U.S.S.G. § 1B1.3(a)(1)(B). A jointly undertaken criminal activity is a criminal plan or scheme undertaken by the defendant together with others, even if not charged as a conspiracy. *Id.* § 1B1.3, comment. (n.2).

To determine a defendant's accountability for the acts of others in a criminal scheme, the district court first must make individualized findings as to the scope of the criminal activity undertaken by the defendant. *United States v. Hunter*, 323 F.3d 1314, 1319, 1322 (11th Cir. 2003) (vacating and remanding where district court made findings regarding reasonable foreseeability without first determining scope of criminal activity that the defendants jointly agreed to undertake); *see also* U.S.S.G. § 1B1.3, comment. (n.2). The district court may consider any implicit agreement fairly inferred from the conduct of the defendant and others in determining the scope of the criminal activity that the defendant agreed jointly to undertake. U.S.S.G. § 1B1.3, comment. (n.2). Once the district court has determined the scope of the jointly undertaken criminal activity, a defendant may be held accountable for losses resulting from the reasonably foreseeable acts of other participants. *Hunter*, 323 F.3d at 1319.

We review the district court's findings of fact and loss calculations for clear error. *United States v. McCrimmon*, 362 F.3d 725, 728 (11th Cir. 2004). Review for clear error is deferential, and we will not disturb the district court's finding unless left with a definite and firm conviction that a mistake was made. *United*

5

*States v. Ghertler*, 605 F.3d 1256, 1267 (11th Cir. 2010). The district court's application of U.S.S.G. § 1B1.3, however, is reviewed *de novo*. *McCrimmon*, 362 F.3d at 728.

Defendant initially acknowledged that she had joined with Holloman to participate in the fraudulent check scheme. During her interview with the probation officer after entering a plea of guilty, Defendant stated that her aunt, Venus Holloman, was already active in the fraudulent check scheme when she solicited Defendant's participation. According to Defendant, she agreed to take part in the scheme and checks were sent to her at her boyfriend's residence.[1] But after the PSR had been prepared, Defendant backed off the above admission. In making Defendant's loss calculation, the PSR had included checks that were attributable to Holloman after Defendant had joined the scheme to which Holloman had introduced her. Without the inclusion of this loss amount, Defendant's loss calculation would have been $29,600, which was just $400 shy of the $30,000–$70,000 threshold necessary for a six-level increase. With this loss

---

[1] In addition, Jamile Williams, another aunt of Defendant's, indicated that Defendant had later recruited her to participate in this same scheme. But having decided to quit the scheme after having cashed several checks, Williams stated that Defendant cashed future checks sent to Williams in the latter's name. Although in her objections, Defendant denied having cashed checks issued in Williams' name, when she was jointly interviewed with Williams, she did not dispute Williams' allegation, but merely said she could not remember. This factual dispute was of no moment, however, because Defendant did not contest the inclusion of losses attributable to Williams.

amount included, however, Defendant's loss amount was calculated at $47,350, qualifying her for the six-level increase.

In objections filed by her attorney, the latter indicated that, even though Defendant had originally told the probation officer that Defendant had agreed to join in the scheme suggested by her aunt, in fact Defendant had initially rejected her aunt's offer. And, according to the pleadings, it was only later on that Defendant contacted the organizer of the scheme, Gilmore-Grier, without involving Holloman. Neither Defendant nor anyone else testified at the sentencing hearing in support of the above contradiction of her initial admission, nor explained how Defendant would have been able to make the contact. But her co-defendant Holloman, who was likewise trying to avoid being held responsible for loss attributable to Defendant, told the probation officer that Defendant initially declined to participate, but later changed her mind, got Gilmore-Grier's number from Holloman's telephone, and contacted the latter to convey her agreement to participate in the scheme.

To the extent that Defendant is arguing that the district court did not make an individualized finding as to the scope of her jointly undertaken criminal activity, her argument is unpersuasive. The court did not attribute loss amounts resulting from the entire criminal activity to the Defendant, but, after hearing argument from counsel, made an individualized determination as to her jointly undertaken

7

criminal activity. Even if the district court could have perhaps articulated more clearly its findings, we need not reverse because the record supports the district court's determination of Defendant's loss amount. *See United States v. Petrie*, 302 F.3d 1280, 1290 (11th Cir. 2002) ("sentencing court's failure to make individualized findings regarding the scope of defendant's activity is not grounds for vacating a sentence if the record support[ed] the court's determination with respect to the offense conduct, including the imputation of others' unlawful acts to the defendant"). From the facts in the record, the district court could fairly infer an implicit agreement between Holloman and Defendant, thereby making the checks cashed by Holloman a part of the scope of Defendant's jointly undertaken criminal activity. *See* U.S.S.G. § 1B1.3, comment. (n.2). Accordingly, we find no reversible error in the district court's loss calculations for Defendant.

    B.    <u>Criminal History</u>

Defendant received criminal history points for three separate convictions relating to other fraudulent activity. She argues that two of those convictions should have been considered related, which argument, if accepted, would have reduced her number of criminal history points. The district court concluded that the convictions were not related, and Defendant now appeals that decision.

We address these offenses in chronological order by conviction date. On September 15, 2010, Defendant was convicted in DeKalb County, Georgia of

forgery and identity fraud, arising out of her effort to cash a stolen check at a bank in January 2010. The court imposed a one-year term of imprisonment to be followed by four years of probation. Defendant received two criminal history points as a result of this conviction. DeKalb authorities also nolle prossed a separate charge of financial transaction fraud based on Defendant's alleged theft of a purse containing over 20 credit cards.

In March 2011, Defendant was convicted of unauthorized use of a credit card and third degree grand theft in St. Lucie County, Florida, based on her credit card fraud in a jewelry store in May 2009. She received a five-year probationary term. Defendant received one criminal history point as a result of this conviction.

In July 2012, Defendant was convicted of theft by taking in DeKalb County, Georgia, based on her theft of an automobile from an automobile sales company on May 21, 2009. She received a two-year sentence, with the sentence reduced to the 338 days she had already served. Defendant received two criminal history points as a result of this conviction.

Further, because the present offense (committed between February 2, 2011 and June 20, 2011) was committed during Defendant's term of probation imposed as a result of the Florida conviction, two additional points were added pursuant to

U.S.S.G. § 4A1.1(d).[2] All total, Defendant had seven criminal history points, which placed her in criminal history category IV.

Defendant objected at sentencing that the conviction for forgery and identity fraud and the conviction for theft by taking should have been considered to be related and counted as only one conviction. Had this occurred, Defendant would have received only three criminal history points for the two offenses, instead of the four points she received by having them counted as separate convictions, and her total points would have been just six. With only six criminal history points, Defendant would have then been placed in category III, and thus subject to a lower Guidelines' range. In support of this argument, Defendant notes that an accusation charging her with theft by taking was filed in June 2009 in DeKalb County and that this charge could have been consolidated at the sentencing in September 2010 in DeKalb for the unrelated forgery and identity fraud conviction. She further asserts that, at the time of the 2010 DeKalb County proceeding, she believed that sentencing to have represented a global settlement of all her pending charges.

We review for clear error a district court's determination that prior convictions are not related under U.S.S.G. § 4A1.2. *Hunter*, 323 F.3d at 1322. As to the first argument, it is not clear, as a factual matter, that DeKalb was in a

---

[2] To put the timing of Defendant's offenses in perspective, she began the commission of the present offense in February 2011, less than five months after being sentenced in DeKalb County, Georgia for forgery and identity fraud. She was given a probationary sentence in St. Lucie, Florida in March 2011, one month into her commission of the present offense, with her conduct continuing for three more months.

10

position to resolve the theft by taking charge in 2010.  A warrant for Defendant's arrest was not issued until February 2012 and not served on Defendant until May 2012.  Nor is it certain whether or not Defendant would have been willing to plead guilty to that charge at that time or what plea agreement the State would have agreed to with the addition of that charge.  Further, whether or not Defendant believed or hoped that her 2010 sentencing represented a global resolution of her pending charges, the only charge that was nolle prossed was a third unrelated identify fraud and financial transaction charge.  If the theft by taking charge sentenced in 2012 was to have been resolved by a global agreement, that objection should have been made at the time Defendant was sentenced on that charge in 2012.

Regardless of all the above, though, Defendant's argument that the two convictions were related for Guidelines' purposes finds no support in the Guidelines.  Section 4A1.2(a)(2) of the Sentencing Guidelines provides:

> If the defendant has multiple prior sentences, determine whether those sentences are counted separately or as a single sentence.  Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense).  If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day.  Count any prior sentence covered by (A) or (B) as a single sentence.

U.S.S.G. § 4A1.2(a)(2).

There having been no intervening arrest between the commission of the two offenses at issue, then the prior sentences for each should have been counted separately, as the district court did, <u>unless</u> either the sentences resulted from offenses contained in the same charging instrument or the sentences were imposed on the same day.  Yet, neither of these preconditions for counting the two separately exists.  The sentences did not emanate from the same charging instrument nor were they imposed on the same day.  That is the end of the debate for purposes of applying § 4A1.2(a)(2).

As to Defendant's argument that sentences on the two offenses <u>should</u> have been imposed on the same day, she cites no authority for this proposition and no authority to suggest that, even if true, this fact would warrant ignoring the plain language of § 4A1.2, which requires that the two sentences at issue be counted separately.  Therefore, the district court did not clearly err in refusing to treat the two sentences as related.

For the above reasons, Defendant's sentence is **AFFIRMED.**